IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ISAAC YOUNG, et al.,                       :
      Plaintiffs,                          :          CIVIL ACTION
                                           :
      v.                                   :
                                           :
BETHLEHEM AREA VO-TECH                     :          NO.  06-CV-2285
SCHOOL, et al.,                            :
      Defendants.                          :


<u>MEMORANDUM</u>

LEGROME D. DAVIS, J.                                         FEBRUARY 28, 2007

      Presently before the Court is Defendants' Motion to Dismiss Pursuant to 12(b)(6) (Doc.

No. 28) and Plaintiffs' Response thereto (Doc. No. 29).  For the reasons that follow, Defendants'

Motion is GRANTED in part and DENIED in part.

**I. Legal Standard**

      On a Rule 12(b)(6) motion to dismiss, the Court will "construe all factual allegations in

the complaint[] most favorably to the [plaintiffs]" and will grant the motion "only if it appears

certain that no relief could be granted to them under any set of facts which could be proven."

<u>Shubert v. Metrophone, Inc.</u>, 898 F.2d 401, 403 (3d Cir. 1990).

**II. Factual Allegations**

      This suit is brought by Isaac and Vicki Young against a public vocational school, the

Bethlehem Area Vo-Tech School ("Vo-Tech"), and against several of its managerial employees

both in their personal and in their official capacities.  Some time around 1998, according to the

Complaint, Isaac Young (hereafter "Young") was hired by Vo-Tech as a systems engineer responsible for maintaining the school's computer system networks and for training staff on the computers.  Young was several times promoted over the years and, in 2001,  was promoted to the position of "Instructional Coordinator."

Defendant, Brian Williams, is the Principal and or Executive Director" of the school. (Third Am. Compl. (hereafter "Compl.") ¶ 12.)  In 2004 Young repeatedly spoke to Williams about the offensive, racist remarks about African-American students at the school allegedly made by Joseph Greb, an assistant principal at Vo-Tech.  Young is African-American.  Williams reacted to Young's reports with an "open[] display[ of] hostility towards Mr. Young."[1]  (Compl. ¶ 25.)  Williams then "[a]pparently" (Compl. ¶ 25) advised Young that Greb had received a warning.

Greb resigned from Vo-Tech in November 2004 and is not a defendant in this suit.  Greb subsequently submitted an application for the vacant position of assistant director.  When Young learned that Greb was under consideration for the open position, Young expressed his opinion to Williams that Greb should not return to Vo-Tech.  In response, Williams "was even more hostile" towards Mr. Young than on previous occasions (Compl. ¶ 30), which led Young to warn Williams that if Greb were hired then Young would complain to the school board.  As it turned out, Greb was not hired; rather the school eventually hired Sandra Cook.

---

[1]The Complaint additionally states that Williams "displayed . . . actual malice and willful misconduct towards Mr. Young."  (Compl. ¶ 25.)  This is a legal conclusion, not a factual allegation.  The Complaint itself, in an introductory section, explains that it was amended for the third time in order to "more specifically plead the [42 Pa. Cons. Stat. Ann. § 8550] exception to immunity."  (Compl. 2.)

Cook is a defendant in this suit. The Complaint mentions four incidents in which Cook was involved. First, in March 2005, Cook had Young demoted. The demotion followed on what Cook explained to be a "review [of] Mr. Young's duties with the goal of downgrading his position . . . so as to avoid potential lawsuits from the Pennsylvania Department of Education." (Compl. ¶ 33.) At the same time that Young was demoted, he was deprived of some "consulting duties" that he had previously held. (Compl. ¶ 37.) Young alleges that Cook, in having him demoted, was acting under the direction of Williams. (Compl. ¶ 33.) Young further alleges that both Cook and Williams, in having him demoted, "discriminated against, harassed and retaliated against" him. (Compl. ¶ 33.)

The second incident involving Cook occurred some time after the demotion. On this occasion, Cook threatened to have relatives of hers "review and conduct the technology needs assessment" of the school. (Compl. ¶ 38.) Although the assessment was Young's responsibility, Cook's relatives, she threatened, would do it for free. Young claims that this threat was an act of "racial discrimination, harassment and retaliation . . . with actual malice and willful misconduct." (Compl. ¶ 39.) Young complained of the threat not only to Cook herself and to Williams but also to school superintendents Angelo Senese, Joseph Lewis and Richard Grove, all of whom are named as defendants. Young's grievances regarding the threat were ignored.

The third incident involving Cook occurred after Young, on April 23, 2005, left work one hour early in order to attend a "student outreach." Though his early departure was with "prior administrative approval" (Compl. ¶ 43), Cook subsequently accused Young of lying and of "falsifying his time" (Compl. ¶ 44). She threatened him with "'repercussions.'" (Compl. ¶ 43.) According to Plaintiff, "[w]hite faculty and those not complaining openly and proactively about

3

race, color and ethnic issues" do not receive such treatment.  (Compl. ¶ 44.)

Finally, on June 2, 2005, Williams and Cook allegedly coerced a female employee of Vo-Tech into falsely accusing Young of harassing her.  Williams demanded that Young supply a written account of the fabricated incident of harassment, which Young of course could not supply.  Young fell into a depression and the next day he took a temporary medical leave from Vo-Tech.  According to Defendants' motion papers, at this time Young is still on medical leave. (Br. in Supp. of Mot. 18 n.5.)

**III.  Claims for Relief**

The Complaint contains ten counts.  Count I is for "race discrimination, harassment and retaliation" under Title VII of the 1964 Civil Rights Act.  Count II is for "race discrimination, harassment and retaliation under the Pennsylvania Human Relations Act (PHRA).  Count III is for "race discrimination, harassment and retaliation in violation of" 42 U.S.C. § 1981.  (Compl. 20.)  Count IV is for "race discrimination, harassment and retaliation in violation of" 42 U.S.C. § 1983.  (Compl. 21.)  Count V is for defamation.  Count VI is for invasion of privacy.  Count VII is for intentional infliction of emotional distress.  Count VIII is for breach of Young's employment contract.  Count IX is for fraud.  And Count X is a claim by Vicki Young for loss of consortium.  Not all the defendants are targeted by every claim.  The defendants are Vo-Tech, Williams, Cook, Senese, Lewis and Grove.

**IV.  Jurisdiction**

Jurisdiction for Counts I, III and IV is based on federal question jurisdiction, 28 U.S.C. § 1331, and also, in the case of the § 1983 claim, on 28 U.S.C. § 1343.  Jurisdiction for the remaining counts is based on the court's supplemental jurisdiction.  28 U.S.C. § 1367.

4

## V.  Count I: Title VII

Count I encompasses Title VII claims for discrimination, harassment and retaliation. These claims are brought by Young against Vo-Tech and against each of the individual defendants in his or her official capacity.

Defendant requests dismissal of the Title VII claims against the individual defendants in their official capacities on the ground that these claims "merge" with the claim against Vo-Tech. This argument is sound.  "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which the officer is an agent."  Monell v. Dep't of Social Servs., 436 U.S. 658, 691 n.55, 98 S. Ct. 2018, 2036 n. 55 (1978).  The Title VII claims against the individual defendants, each in his or her official capacity, are needlessly duplicative of the claim against Vo-Tech.  Foxworth v. Penn. State Police, No. Civ. A. 03-6795, 2005 WL 840374, at *4-*5 (E.D. Pa. April 11, 2005); see generally John C. Jeffries, In Praise of the Eleventh Amendment and Section 1983, 84 Va. L. Rev. 47, 59-68 (1998) (explaining the origin of the modern doctrine of "official capacity" and "individual capacity" suits).  Accordingly those claims are dismissed.

The Title VII claims against Vo-Tech, however, are untouched, since there is no argument for their dismissal.

## VI.  Count II: Pennsylvania Human Relations Act

Count II encompasses the PHRA claims, which are brought by Young against Vo-Tech and against each of the individual defendants, this time not only in his or her official capacity but also in his or her individual capacity.

*1. The PHRA claims against the individual defendants in their official capacities*

5

The PHRA claims against the individual defendants in their official capacities, like the corresponding Title VII claims, are dismissed as needlessly duplicative of the PHRA claims against Vo-Tech.  See Irene B. v. Phila. Acad. Charter Sch., No. Civ. A. 02-1716, 2003 WL 24052009, at *9 (E.D. Pa. Jan. 29, 2003) ("in the interest of clarity and efficiency" dismissing both federal and state law claims against school principal in his official capacity); Martin v. City of Philadelphia, No. Civ. A. 99-543, 2000 WL 1052150, at *13 (E.D. Pa. July 24, 2000) ("to the extent [that state law claims] are asserted against the officers in their official capacities, the Court will consider the state law claims as being asserted against the City"); Miller v. Bd. of Property Assessment, Appeals and Review, 703 A.2d 733, 735 (Pa. Commw. Ct. 1997) (applying federal precedents to determine significance of defendant's having been sued in official capacity on state law claim).  The real party in interest is the governmental entity itself, and not the named officials; hence, the official capacity claims are dismissed.

*2. The PHRA claims against Superintendents Senese, Lewis and Grove in their individual capacities*

Defendants' request for the dismissal of the PHRA claims against Senese, Lewis and Grove in their individual capacities (Br. in Supp. of Mot. 5) is denied.  Defendants' argument is that each of these three defendants is protected by Pennsylvania's doctrine of absolute immunity for high public officials.  (Id. at 5-6.)

Pennsylvania's common law doctrine of high public official immunity was reaffirmed by the Pennsylvania Supreme Court in Lindner v. Mollan, 544 Pa. 487, 677 A.2d 1194 (1996).  There, the Pennsylvania Supreme Court stated the content of the doctrine as follows:

[T]he doctrine of absolute privilege for high public officials, as its name implies, is

unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

Id. at 490, 677 A.2d at 1195 (citing Matson v. Margiotti, 371 Pa. 188, 194, 88 A.2d 892, 895 (1952)) (indentation of block quote omitted) . This common law doctrine has been applied to immunize high public officials from suits that assert common law torts such as defamation, intentional infliction of emotional distress and invasion of privacy. See, e.g., Smith v. Sch. Dist. of Phila., 112 F. Supp. 2d 417, 425-26 (E.D. Pa. 2000). Liability under the PHRA, however, is something different. In this instance, the cause of action was created by the state legislature. This Court has not found a single judicial decision that considers the applicability of the common law doctrine of high public official immunity to a claim under the PHRA. Nor is this Court prepared to apply the doctrine in order to defeat such a claim.

In sum, the PHRA claims against Williams, Cook, Senese, Lewis and Grove in their official capacities are dismissed. The PHRA claims against Vo-Tech and against Williams, Cook, Senese, Lewis and Grove in their individual capacities remain.

**VII. Count III: § 1981**

Under Count III, Young asserts violations of 42 U.S.C. § 1981 by Vo-Tech, Williams, Cook, Senese, Lewis and Grove, the five individual defendants each being named both in his or her individual capacity and in his or her official capacity. As an initial matter, the claims against the individual defendants in their official capacities will be dismissed as needlessly duplicative of the claim against Vo-Tech.

*1. Whether § 1981 provides a cause of action against Vo-Tech*

7

As for the § 1981 claim against Vo-Tech, this Court will follow the Supreme Court's holding in Jett v. Dallas Independent Sch. Dist., 491 U.S. 701, 109 S. Ct. 2702 (1989), that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units," id. at 733, 109 S. Ct. at 2722. Whereas the Ninth Circuit has held that the 1991 Civil Rights Act superseded this holding of Jett, see Fed'n of African American Contractors v. City of Oakland, 96 F.3d 1204, 1214 (9th Cir. 1996), the Third Circuit has yet to rule on that question, see Jones v. Sch. Dist. of Phila., 198 F.3d 403, 415 (3d Cir. 1999), and cases in this district have both followed and rejected the Ninth Circuit's decision, compare Watkins v. Penn. Bd. of Probation and Parole, No. Civ. A. 02-2881, 2002 WL 32182088, at *5 (E.D. Pa. Nov. 25, 2002) (following Federation) with Poli v. Se. Penn. Transp. Auth., No. Civ. A. 97-6766, 1998 WL 405052, *12 (E.D. Pa. July 7, 1998) (rejecting Federation).[2] This Court, being persuaded that Jett is still good law, holds that § 1981 does not of itself provide Young with a cause of action against Vo-Tech.

2. *Whether § 1981 provides a cause of action against the individual defendants in their individual capacities*

When the Supreme Court decided Jett, the only defendant remaining in that case was a governmental entity. This Court will not, however, follow a different rule with respect to individual state actors sued in their individual capacities. This Court agrees with the holding of the Fifth Circuit that "when a state employee seeks to hold an individual fellow state employee

---

[2]The Fifth and the Eleventh Circuits, in contrast to the Ninth, have held that Jett remains good law following the 1991 Civil Rights Act. See Oden v. Oktibbeha County, 246 F.3d 458, 464 (5th Cir. 2001) (rejecting Federation); Butts v. County of Volusia, 222 F.3d 891, 893 (11th Cir. 2000) (same).

liable in damages for violation of § 1981 rights, such claim must also" – like the claim against the governmental entity itself – "be pursued under the remedial provisions of § 1983." <u>Felton v. Polles</u>, 315 F.3d 470, 482 (5th Cir. 2002) (internal quotes omitted); <u>see also</u> <u>Foxworth v. Penn. State Police</u>, No. Civ. A. 03-CV-6795, 2005 WL 840374, at *5-*6 (E.D. Pa. Apr. 11, 2005) (§ 1981 claims against state employees in their individual capacities "merged" into § 1983 claims); <u>contra</u> <u>Poli</u>, 1998 WL 405052, at *12 (allowing § 1981 claims directly against state actors in individual capacity, since "[t]he holdings of <u>Jett</u> are inapplicable to alleged discriminatory acts by private parties"); <u>cf.</u> <u>Wright v. Montgomery County</u>, No. Civ. A. 96-4597, 1999 WL 145205, at *7-*8 (E.D. Pa. Mar. 15, 1999) (dismissing § 1983 claims against individual state actors in individual capacities but retaining § 1981 claims), <u>aff'd</u>, 215 F.3d 367 (3d Cir. 2000) (interlocutory appeal of qualified immunity rulings) <u>and</u> 85 Fed. Appx. 312 (3d Cir. 2004) (unpublished opinion).

*3.  Disposition of the § 1981 claims*

Although the Complaint does not invoke § 1983 in seeking relief for the § 1981 violations alleged under Count III, the Court will assume that Young incorporates into Count IV the § 1981 violations alleged against Vo-Tech and against Williams, Cook, Senese, Lewis and Grove in their individual capacities.

**VIII.  Count IV: § 1983**

Under Count IV, Young asserts claims against Vo-Tech, Williams, Cook, Senese, Lewis and Grove, the five individual defendants each being named both in his or her individual capacity and in his or her official capacity.  These claims are asserted in the following language from the Complaint:

9

> Defendants['] conduct violated federally protected rights under 42 U.S.C. Section 1983.
> Individual defendants are specifically liable for violation of Section 1983 for their
> intentional violation of Constitution [sic] property rights which in this case are
> established via violation of Plaintiff's, Isaac E. Young, Jr.['s], Act 93 Contract.  [Vo-
> Tech] through its implementation of it[s] policies or customs of condoning the acts and
> actions complained of was a cause of Defendants' illegal actions and actions [sic].

(Compl. ¶ 60.)

Section 1983 "is not itself a source of substantive rights, but a method for vindicating

federal rights elsewhere conferred by those parts of the United States Constitution and federal

statutes that it describes."  Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694 n.3

(1979).  A plaintiff must, therefore, ground a § 1983 claim by asserting a violation of a federal

right.  The paragraph just quoted from the Complaint appears to ground Young's § 1983 claims

on just one federal right, the constitutional right of a person to "procedural" due process before a

governmental entity deprives the person of property.  Additionally, as noted above, the Court

takes it that Young asserts another ground for his § 1983 claims by asserting § 1981 violations.

This being a separate § 1983 cause of action, it receives a separate discussion below.

A potential third ground of Young's § 1983 claims is mentioned in Young's Response to

the Motion, though not in the Complaint: Young's Fourteenth Amendment right to equal

protection of the laws.  (Mem. of Law in Resp. 18.)  For the purpose of resolving the instant

Motion, the Court finds no difference between a § 1983 cause of action based on an Equal

Protection Clause violation and a § 1983 action based on a § 1981 violation – or, more

accurately, no difference that would make a difference to Young.  Hence there is no need for a

separate discussion of the Equal Protection Clause.

*1. Section 1983 claims based on "procedural" due process violations*

"No state shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  In its procedural aspect, this constitutional command is satisfied so long as adequate procedures have been followed in carrying out the deprivation, whether of life, of liberty or of property.   But before any question of the adequacy of the procedures is entertained, it must be shown that a deprivation of one of the protected interests is at stake.  Young asserts that by his demotion in March 2005 he has been deprived of a property interest.

A benefit that a person receives amounts to a property interest if it is a benefit to which the person has been provided with "a legitimate claim of entitlement" by some other source of "rules and understandings" than the Constitution itself.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972).  In Young's case, the benefit in question is the benefit of continued employment by a governmental entity at a specified amount of compensation.  There are circumstances in which the benefit of continued government employment may have been shored up by such guarantees that the continued employment amounts to a property interest.  See, e.g., Perry v. Sindermann, 408 U.S. 725, 602-603, 92 S. Ct. 1694, 2700 (1972) ("In this case, the respondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.'").  Young's allegations, however, do not place him in such circumstances.  Rather, Young's case appears materially indistinguishable from the case of Bishop v. Wood, 426 U.S. 345, 96 S. Ct. 2074 (1976).

In Bishop, the Supreme Court held that a city policeman did not have a property interest in continued employment even though he was classified by the city as a "permanent employee"

11

and his continued employment had been shored up by the following guarantee contained in a city

ordinance:

> A permanent employee whose work is not satisfactory over a period of time shall be notified in what way his work is deficient and what he must do if his work is to be satisfactory. If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager. Any discharged employee shall be given written notice of his discharge setting forth the effective date and reasons for his discharge if he shall request such a notice.

Bishop, 426 U.S. at 344 n.5, 96 S. Ct. at 2077 n.5. The Supreme Court held that this ordinance,

as a matter of state law, "grant[s] no right to continued employment but merely condition[s] an

employee's removal on compliance with certain specified procedures." Id. at 345, 96 S. Ct. at

2078. Consequently, as a matter of constitutional law, it did not create a property interest.

In Young's case, the guarantee of continued employment at a certain level of

compensation is to be sought, according to Young, in a Pennsylvania statute, 24 Pa. Cons. Stat.

Ann. § 11-1164, (referred to by Young as "Act 93") and in an "administrative compensation

plan" that Vo-Tech adopted pursuant to the statute. This statute provides that

> [s]chool employers shall be required to adopt written administrator compensation plans which shall apply to all eligible school administrators, as provided in this section, and which shall continue in effect until a time specified in the compensation plan, but in no event for less than one school year.

24 Pa. Const. Stat. Ann. § 11-1164(d). "Administrative compensation" – the subject of these

"plans" that the statute directs "school employers" to adopt – is defined by the statute to include

"any board decision that directly affects administrator compensation such as administrative

evaluation." 24 Pa. Cons. Stat. Ann. § 11-1164(a). Attached to the Complaint is a copy of the

administrative compensation plan that Vo-Tech adopted on March 5, 2002, effective until June

30, 2006.  This plan sets out procedures for conducting a "performance appraisal" of employees such as Young, at which "any changes or additions or deletions of job elements will be discussed for the purpose of making the Job Description more accurate" and at which the employee's job performance will be scored on a scale of 1 to 4.  (Compl., Ex. 2, Vo-Tech Administrative Compensation Plan effective March 5, 2002.)  Depending on the scoring of the employee's performance, the employee's salary will either remain unchanged or increase by a percentage corresponding to the particular score.

This guarantee made to Young by the Vo-Tech administrative compensation plan is like the guarantee made by the city ordinance to the litigant in <u>Bishop</u>, in that it is a <u>procedural</u> guarantee.  Notwithstanding that 24 Pa. Cons. Stat. Ann. § 11-1164 gives Young a judicial remedy if his compensation is affected other than according to the terms of the plan (see the discussion of Young's claim for breach of contract, <u>infra</u>), there is no remedy for an unwanted change in compensation so long as the procedures have been followed.  Consequently, the protections afforded by the Due Process Clause have not been triggered.  <u>Cf. Bishop</u>, 426 U.S. at 347, 96 S. Ct. at 2078 (adopting a construction of the city ordinance according to which "the City Manager's determination of the adequacy of the grounds for discharge is not subject to judicial review; the employee is merely given certain procedural rights").

*2. Section 1983 claims based on § 1981 violations*

With respect to the alleged § 1981 violations that the Court takes Young to assert as part of a § 1983 cause of action, Defendants argue for dismissal both on the ground that the Complaint has not alleged facts that constitute a violation of § 1981 and on the ground that the individual Defendants are protected by a qualified, or "good faith," immunity.

13

Since Young alleges violations of § 1981 under the heading "RACE DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF SECTION 1981," the Court takes it that Young puts forward three separate legal theories of § 1981 violations.  For § 1981 may be violated either by conduct that is like the prohibited conduct in a Title VII pre-text case of disparate treatment ("race discrimination" theory of a § 1981 violation),[3] or, secondly, by conduct that is like the prohibited conduct in a Title VII harassment case ("racial harassment" theory of a § 1981 violation)[4] or, thirdly, by conduct that is like the conduct that Title VII's anti-retaliation provision prohibits ("retaliation" theory of a § 1981 violation).  Since based on the first of these three theories (pre-text case of disparate treatment) the Court will allow Young's § 1983 claims based on § 1981 violations to go forward against Vo-Tech and against Williams, Cook, Senese, Lewis and Grove in their individual capacities, there is no need, at this stage in the litigation, to consider the other theories of a § 1981 violation.

(i) elements of the claim

Within the "Title VII scheme of proof" that also governs § 1981 race discrimination claims, Young ultimately has the burden of establishing that the consideration of Young's race

---

[3]Title VII's "scheme of proof" for what are known as pretext cases of disparate treatment "should apply to claims of racial discrimination under § 1981."  Patterson v. MacLean Credit Union, 491 U.S. 164, 186, 109 S. Ct. 2363, 2377-78 (1989), superseded on other grounds by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074.

[4]The Supreme Court's holding that § 1981 does not establish a claim for harassment, Patterson v. MacLean Credit Union, 491 U.S. 164, 178, 109 S. Ct. 2363, 2373 (1989), was superseded by the 1991 Civil Rights Act, Pub. L. No. 102-166, 105 Stat. 1074.  Since then, the Third Circuit only in unpublished opinions has stated that the basic elements of a racial harassment claim are the same under § 1981 and under Title VII.  Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 94 (3d Cir. 2005) (unpublished opinion); Ocasio v. Lehigh Valley Family Health Ctr., 92 Fed. Appx. 876, 879-80 (3d Cir. 2004) (unpublished opinion).

was a "determinative factor" in an adverse employment decision.  Watson v. Se. Penn. Transp. Auth., 207 F.3d 207, 220 (3d Cir. 2000).  In this case the adverse employment decision presumably was the March 2005 demotion of Young.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 411-12 (3d Cir. 1999) ("employment decisions such as . . . demotions may suffice to establish" a Title VII adverse employment decision).[5]

For the three individual defendants whom the Complaint does not allege to have been responsible for the § 1981 violation other than by ignoring Young's grievances – namely, Superintendents Senese, Lewis and Grove – these allegations of ignored grievances do not give rise to a claim against them unless the § 1981 violation occurred with their "actual knowledge and acquiescence" in the violation.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Additionally, for Vo-Tech in particular (among the six defendants) to be liable, Young would eventually have to establish that a custom or policy of Vo-Tech's caused the § 1981 violation. Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978).  If the superintendents are "policymakers" with respect to school employment decisions, then the superintendents' acquiescence in the violation would suffice to establish not just their own liability but also, under the rule of Monell, Vo-Tech's liability.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

(ii) adequacy of the factual allegations

---

[5]In order to establish that the consideration of his race was a determinative factor in his demotion, Young will have the benefit of Title VII's three-stage burden-shifting framework.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S. Ct. 2742 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973) (seminal case); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc) (interpreting Hicks).

Defendants argue for dismissal of these § 1981 discrimination claims on the ground that the Complaint offers nothing but a "bare allegation," which is "not sufficient to put the Defendant on notice of what the claim is and [what] the grounds on which it rests" are.  (Br. in Supp. of Mot. 8.)  The Court disagrees.  The Complaint states that Cook's and Williams' action securing the demotion of Young in March 2005 "was done . . . as [an] act[] of racial discrimination."  (Compl. ¶ 34.)  This suffices to allege that, but for Young's race, Cook and Williams would not have had Young demoted.  Furthermore, concerning Senese, Lewis and Grove, the Complaint alleges that they were advised of (Compl. ¶ 18) and "condoned . . . the intentional acts and actions of their lower subordinate managers (Defendants Williams and Cook) in that racially motivated discrimination."  (Compl. ¶ 40.)  Under the liberal notice pleading standard of the Federal Rules, this suffices for the claims against Senese, Lewis and Grove.[6]  It also suffices to allege that a policy of Vo-Tech's caused the § 1981 violations and thus suffices to allege Vo-Tech's liability.

(iii) qualified immunity

Another question is whether the individual defendants are protected by a qualified immunity from these § 1981 race discrimination claims.[7]  To decide the question of the individual defendants' qualified immunity, the Court undertakes a two-step analysis.  In step one,

---

[6]The Third Circuit no longer has a heightened pleading standard in § 1983 cases, even in such cases where a qualified immunity defense is raised.  Thomas v. Independence Twp., 463 F.3d 285, 294 (3d Cir. 2006) (holding, however, that a more definite statement may be required of the plaintiff in order to enable the Court's early evaluation of a qualified immunity defense).

[7]Defendants' unanchored discussion of state law immunity doctrines is irrelevant to this question.  Howlett v. Rose, 496 U.S. 356, 375, 110 S. Ct. 2430, 2442 (1990).

the Court determines whether the facts alleged would constitute a violation of a federal right.[8] Here, it has already been determined that Young's allegations are sufficient to assert a violation of § 1981 by race discrimination. In step two the Court determines whether, in violating this federal right, the individual defendants violated a "clearly established . . . right[] of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (in context of Bivens claim and implied statutory claims against federal officials, setting out elements of qualified immunity). It is beyond argument that Young's § 1981 right not to be demoted due to his race is a clearly established right of which a reasonable person would have known. Acquiescence in Young's being demoted due to his race is likewise something that any reasonable person would have known to itself be a violation of Young's rights. Consequently none of the defendants are protected by a qualified immunity.

As previously noted, the Court finds it sufficient at this stage to consider only Young's "race discrimination" theory of a § 1981 violation, without discussing the racial harassment theory or the retaliation theory of a § 1981 violation. "[Q]ualified immunity is an immunity from suit, rather than a mere defense to liability." Hubbard v. Taylor, 399 F.3d 150, 167 (3d Cir. 2005) (internal quotes omitted). Since Defendants' qualified immunity argument fails with respect to the race discrimination theory of a § 1981 violation, all the defendants will have to submit to discovery on the associated § 1983 claim, during which time Young's racial harassment theory or his retaliation theory of a § 1981 violation will, or will not, find support. If,

---

[8]This first step is regularly stated with reference to rights protected by the Federal Constitution as opposed to federal statutes. See, e.g., Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697 (1999). It seems clear, however, that the two-step analysis is applicable for statutory as well as for constitutional rights.

however, after discovery Young chooses to rely on one of these other theories of a § 1981

violation, then Defendants may at that time wish once again to raise the qualified immunity issue

and the Court will once again consider the issue.

## IX.  Count V: Defamation

In "Count V," Young asserts a defamation claim against Vo-Tech, against Williams in his

official capacity, against Williams in his individual capacity, against Cook in her official capacity

and against Cook in her individual capacity.  Plaintiff alleges Cook and Williams maliciously

disclosed "highly sensitive personal . . . medical information concerning Plaintiff" which was

actually "false and defamatory in character."  (Compl. ¶¶ 64-65.)

The defamation claim against Vo-Tech is barred by the immunity that the Pennsylvania

Political Subdivision Tort Claims Act ("PSTCA") confers on "local agenc[ies]."  42 Pa. Cons.

Stat. Ann. §§ 8541-8542.  The language of the statute is:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any
> damages on account of any injury to a person or property caused by any act of the local
> agency or an employee thereof or any other person.

24 Pa. Cons. Stat. Ann. § 8541.  The subchapter "otherwise provide[s]" for liability in its next

section, where it describes the limited circumstances in which liability can attach to a local

agency.  One requirement is that "[t]he injury was caused by the negligent acts of the local

agency or an employee thereof . . . ."  42 Pa. Cons. Stat. Ann. § 8542(a)(2).  Another,

concomitant requirement is that the injury-causing act fall under one of eight enumerated

categories.[9]  42 Pa. Cons. Stat. Ann. § 8542(b).  It is clear that these provisions do not "otherwise

---

[9]The statute lists the eight categories under the headings (1) vehicle liability, (2) care,
custody or control of personal property, (3) real property, (4) trees, traffic controls and street

provide" for liability in cases where defamation is claimed.  The local agency immunity

established in § 8541 therefore remains unaffected.  Accordingly the defamation claim against

Vo-Tech is dismissed.  Likewise, the defamation claims against the individuals in their official

capacities are dismissed.  Verde v. City of Philadelphia, 862 F. Supp. 1329, 1337 (E.D. Pa. 1994)

(dismissing "official capacity" claims in conjunction with claim against governmental entity

itself).

       As for the defamation claim against Williams in his individual capacity and the claim

against Cook in her individual capacity, Defendants' argument for immunity under the PSTCA

fails because the PSTCA does not immunize individual employees of a local agency if the

employee caused the plaintiff's injury by an "act constitut[ing] a crime, actual fraud, actual

malice or willful misconduct."  24 Pa. Cons. Stat. Ann. § 8550.  "Willful misconduct" is

synonymous with "intentional tort."  Renk v. City of Pittsburgh, 537 Pa. 68, 72, 641 A.2d 289,

291 (Pa. 1994) (citing King v. Breach, 115 Pa. Commw. 355, 540 A.2d 976 (Pa. Commw. Ct.

1988))  Consequently, the immunity will fail if the defamation claim specifically involves an

allegation that the defendants intended or "desired to bring about the result that followed."  See

Weinstein v. Bullick, 827 F. Supp. 1193, 1206 (E.D. Pa. 1993) (denying motion for summary

judgment based on PSTCA immunity to defamation claim since the claim "includes allegations

that [the defendant] knew that his statements and opinions were improper, erroneous, misleading,

untrue and defamatory" and a genuine issue of material fact had been raised regarding the

allegations).  Young's allegations at this stage are sufficient to allow him to proceed.

---

lighting, (5) utility service facilities, (6) streets, (7) sidewalks and (8) care, custody or control of
animals.  42 Pa. Cons. Stat. Ann. § 8542(b).

**X.  Count VI: Invasion of Privacy**

Under Count VI, Young brings invasion of privacy claims against Vo-Tech, against Williams in his official capacity, against Williams in his individual capacity, against Cook in her official capacity and against Cook in her individual capacity.   The PSTCA immunizes Vo-Tech itself from the claim.

Invasion of privacy is an intentional tort.  See McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998) ("In order to state a cause of action for invasion of privacy, the [plaintiffs must] . . . aver that there was an intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person." (emphasis added)); Restatement (Second) of Torts § 652 E (requiring, for a claim of invasion of privacy by publicly placing the plaintiff in a false light, that "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed").  Therefore, for the invasion of privacy claim, § 8550 of the PSTCA denies immunity to Williams and Cook in their individual capacities.  See Weinstein, 827 F. Supp. at 1206 (denying motion for summary judgment based on PSTCA immunity to invasion of privacy claim since the claim "includes allegations that [the defendant] knew that his statements and opinions were improper, erroneous, misleading, untrue and defamatory" and a genuine issue of material fact had been raised regarding the allegations).

Accordingly, the invasion of privacy claims against Vo-Tech, against Williams in his official capacity and against Cook in her official capacity will be dismissed, but the invasion of privacy claims against Williams and Cook in their individual capacities go forward.

**XI.  Count VII: Intentional Infliction of Emotional Distress**

20

Under Count VII, Young brings intentional infliction of emotional distress claims against Vo-Tech, against Williams in his official capacity, against Williams in his individual capacity, against Cook in her official capacity and against Cook in her individual capacity. Defendants raise the defense of immunity under the PSTCA. This defense protects Vo-Tech (and consequently Williams and Cook "in their official capacities"). And just as with the invasion of privacy claim, and for the same reasons, the defense of immunity cannot protect Williams and Cook in their individual capacities from the claim.

Besides raising the immunity defense, Defendants also contend that Young's allegations are insufficient to support a claim for intentional infliction of emotional distress.

The Third Circuit has predicted that the Supreme Court of Pennsylvania would adopt a claim for intentional infliction of emotional distress with the following four elements: 1) the conduct must be extreme and outrageous; 2) the conduct must be intended; 3) the conduct must cause emotional distress; and 4) the distress must be severe. Silver v. Mendel, 894 F.2d 598, 606 (3d Cir. 1990) ("Although the opinion of the Pennsylvania Supreme Court in Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183, 527 A.2d 988 (1987), has caused considerable speculation as to whether Pennsylvania will recognize the tort of intentional infliction of severe emotional distress, this court has recently predicted that Pennsylvania's highest court will ultimately embrace it."); but see Andrews v. City of Philadelphia, 895 F.2d 1469, 1487 n.7 (3d Cir. 1990) ("We recognize that recent decisions of the Pennsylvania Supreme Court and other courts in Pennsylvania call this court's recognition of the tort of intentional infliction of emotional distress under Pennsylvania law into question."). Defendants focus on the first element. They point out that in order to satisfy this element, conduct must be "so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," DiSalvio v. Lower Merion Sch. Dist., No. Civ. A. 00-5463, 2002 WL 734343, at *6 (E.D. Pa. Apr. 25, 2002) (internal quotes omitted).  According to Defendants, the facts Young alleged do not rise to the level of outrageousness required in order to satisfy the first element of the claim.

This Court finds that the allegation that Williams and Cook coerced another employee at Vo-Tech to falsely accuse Young of harassing her is an allegation that may be proved to rise to the level of outrageousness that would satisfy the first element of the claim.  The claims against Williams and Cook in their individual capacities, therefore, will survive the Motion.

## XII.  Count VIII: Breach of Contract

Count VIII alleges a breach of contract claim against Vo-Tech.  The contract in question is referred to by Young as an "Act 93 Contract."  The term "Act 93" refers to the Pennsylvania legislature's enactment in 1984 of 24 Pa. Cons. Stat. Ann. § 11-1164.  As noted above in connection with the § 1983 claim based on an alleged procedural due process violation, this statute requires schools to adopt an "administrative compensation plan that "shall continue in effect until a time specified in the compensation plan, but in no event for less than one school year."  24 Pa. Const. Stat. Ann. § 11-1164(d). "Administrative compensation" is defined by the statute to include "any board decision that directly affects administrator compensation such as administrative evaluation."  24 Pa. Cons. Stat. Ann. § 11-1164(a).  Young has provided a copy of the administrative compensation plan that Vo-Tech adopted on March 5, 2002, effective until June 30, 2006, and it is this administrative compensation plan, adopted pursuant to the statute, that according to Young is the contract that Vo-Tech breached.  The alleged breach of the

administrative compensation plan/contract was apparently the demotion of Young in March 2005.

Defendants attempt more than one argument against this claim.  First, Defendants suggest that Young predicates his breach of contract claim against Vo-Tech on a theory of respondeat superior.  It is true that it would make no sense to involve the doctrine of respondeat superior (which establishes vicarious liability for negligence) in a claim for breach of contract.  And it is true that under the heading for Count VIII the Complaint does, perplexingly, include a paragraph stating: "Defendant, Bethlehem Area Vo-Tech School is liable for the actions of its employees Defendant Brian Williams and Defendant Sandra Cook upon a theory of Respondeat Superior." (Compl. ¶ 83.)  But it is not necessary to read the Complaint as twisting its breach of contract claim around the respondeat superior doctrine.  The Court will simply ignore paragraph 83 of the Complaint.

Secondly, Defendants assert, "[a] public employee in Pennsylvania generally serves at the pleasure of his employer and thus has no legitimate entitlement to continued employment," citing a Pennsylvania Supreme Court case decided in 1960, twenty-four years prior to the enactment of 24 Pa. Const. Stat. Ann. § 11-1164 ("Act 93").  (Br. in Supp. of Mot. 17-18.)  The Brief says nothing more in connection with this assertion.  This assertion does not constitute an argument.

Thirdly, Defendants assert, "there are no allegations within Plaintiff's Third Amended Complaint that he is no longer employed by [Vo-Tech] and thus his salary and his benefits are still the same." (Br. in Supp. of Mot. 18.)  On the contrary, however, it appears that the Complaint includes at paragraph 37 an allegation that Young's compensation was diminished in March 2005.

23

Finally, Defendants argue that the administrative compensation plan attached to the Complaint and referred to by Young as a contract is not, in fact, a contract.  In support of this claim, Defendants cite no authority, but merely quote the language of Act 93, following which Defendants without warning switch tack and assert that the statute itself, rather than the administrative compensation plan adopted pursuant to the statute, is not a contract: "Clearly the so-called Act 93 is not a contract to employ any specific person.  Act 93 imposes no requirements on public employers beyond meeting and discussing bargainable issues with non-union employees."  (Br. in Supp. of Mot. 17.)  (Purely as an aside, this does not accurately describe the Act 93 requirements.)

Young's Response to the Motion, for its part, also cites no authority on the question of whether the administrative compensation plan is a contract.  Independent research has turned up no case that addresses the question.  The question of administrative compensation plans aside, it is noteworthy that a <u>statute</u> can on occasion be found, as a matter of <u>federal</u> law, to constitute a contract between the governmental entity and some private parties, as has been found in the context of claims asserted under the Contract Clause of the Federal Constitution.  <u>See, e.g.</u>, <u>U.S. Trust Co. v. New Jersey</u>, 431 U.S. 1, 18 n.14, 97 S. Ct. 1505, 1516 n.14 (1977); <u>see also</u> <u>General Motors Corp. v. Romein</u>, 504 U.S. 181, 187, 112 S. Ct. 1105, 1110 (1992) ("The question whether a contract was made is a federal question for purposes of Contract Clause analysis").  This Court is aware of no case applying Pennsylvania law to decide whether a statute, or something perhaps resembling a statute (such as an Act 93 administrative compensation plan), is a contract.

It is, however, unnecessary to reach the question of whether an administrative

24

compensation plan adopted pursuant to Act 93 is a contract.  For whether the plan is a contract or not, this Court holds that Vo-Tech is bound by it and Vo-Tech employees who are covered by the plan have a right to sue for injuries caused by Vo-Tech's violations of the plan.  This has been convincingly resolved by the Commonwealth Court of Pennsylvania.  In <u>Curley v. Bd. of Sch. Directors</u>, 163 Pa. Commw. 648, 663, 641 A.2d 719, 726 (Pa. Commw. Ct. 1994), the Commonwealth Court pointed out that Act 93 requires that the administrative compensation plan, once adopted, "shall continue in effect until a time specified in the compensation plan, but in no event for less than one school year," 24 Pa. Const. Stat. Ann. § 11-1164(d).  The Commonwealth Court continued:

> This language implies that an [administrative compensation plan] is binding, for if it were not, it would not be possible for it to continue 'in effect' for the time specified in the plan. The General Assembly, in enacting a statute, does not intend a result that is absurd, impossible of execution or unreasonable.

<u>Curley</u>, 163 Pa. Commw. at 663, 641 A.2d at 726.  On the basis of this reasoning, the Commonwealth Court held that a former employee of a school district could recover compensation due under the terms of the administrative compensation plan in effect at the time of his employment.  Although here the Complaint specifically alleges that the administrative compensation plan is a contract, this Court does not believe that the claim for "breach of contract" brought under Count VIII would be defeated even were the plan found not to constitute a contract.

The claim for compensation due under the administrative compensation plan will survive the Motion.

## XIII.  Count IX: Fraud

Under Count IX, Young brings a claim of common law fraud against Vo-Tech. The fraudulent actions are alleged to have been taken by Williams and by Cook; Vo-Tech's liability for the actions of Williams and Cook is said to rest "upon a theory of Respondeat Superior [sic]." (Compl. ¶ 89.)  Young's use of the respondeat superior doctrine in this context is not elaborated.[10]  Regardless, the claim will be dismissed because the factual allegations in support of the claim fail to measure up to the requirement that "[i]n averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).

This special pleading requirement has been elaborated by the Third Circuit as follows:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

Examining the Complaint, the Court finds allegations of fraud in paragraphs 36 and 90. These paragraphs do not state with any particularity what Williams' and Cooks' misrepresentation was that allegedly amounted to fraud.  Consequently, this claim is dismissed.

## XIV.  Count X: Loss of Consortium

Vicki Young's loss of consortium claim is brought by her against all the defendants – the individual defendants being named both in their official and in their individual capacities.

---

[10]Defendants appear to take issue with the use of the doctrine, but they too do not elaborate.  The Brief refers to an argument "as set forth above in argument C" (Br. in Supp. of Mot. 18), but Section C of the Brief discusses the federal § 1983 remedy for violations of federal rights.  It is not clear just what argument Defendants have in mind.

Defendants argue for dismissal of the loss of consortium claim on the grounds that (1) civil rights violations do not support a spouse's loss of consortium claim and (2) the Pennsylvania common law claims on which the loss of consortium claim is derivative should be dismissed.  Since certain of the common law claims have survived against Williams and Cook in their individual capacities, the loss of consortium claim will survive against those defendants.  Against the other defendants, however, the claim for loss of consortium will be dismissed.  See McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (holding that "under Pennsylvania Law, loss of consortium derives only from the injured spouse's right to recover in tort").

## XV.  Conclusion

In conclusion, the Motion to Dismiss Pursuant to 12(b)(6) is in part granted and in part denied.